gomery County Court, entered in the office of the clerk of said county on the 19th day of October, 1891, as allowed Edward J. Maxwell, an assignee of John Reddish, $500 as costs of his accounting as such assignee; and also an appeal by said Edward J. Maxwell, as such assignee, from so much of said decree and judgment as adjudged and decreed that said assignee be charged upon the said accounting with the sum of $4,757.39, and directed said assignee to distribute the sum of $2,496.69, as specified in said decree, as follows, viz.: To Daniel M. Reddish, the sum of $291.10; the First National Bank of Amsterdam, the sum of $967.02; Henry E. Reddish, the sum of $309.89; also from so much of said decree and judgment as confirmed the reports of H. L. Huston, the referee appointed to take and state the account herein.

*Edward J. Maxwell* and *R. A. Parmenter*, for the assignee, appellant.

*Z. S. Westbrook*, for the First National Bank of Amsterdam, appellant.

MAYHAM, P. J.:

The principal questions in controversy on the appeal arise out of the decree of the County Court on the accounting of the assignee, who failed to charge himself in the account filed with certain items of wool and a buggy embraced in the inventory filed by the assignee.

The inventory price of this wool was $1,101.34, and the inventory price of the buggy was seventy dollars. The account, as filed, was objected to by the First National Bank of Amsterdam, a creditor of the assignor, having an interest in the assigned estate, and the assignee's account was surcharged by the bank with the amount of these items embraced in the inventory.

The assignee in his accounts filed, credited himself and charged the assigned estate with certain services, disbursements and counsel fees paid for legal services of counsel employed by him, and rendered by him and his law partner in various litigations in which he, as assignee, had been involved in the administration of his trust, which were objected to by the First National Bank of Amsterdam; and a referee was appointed by the court to take and state the accounts of the assignee and report to the County Court.

The case discloses that hearings were had and proofs taken before the referee, upon which he made his report to the County Court, with the proofs taken by him, and the report, as amended, was by that court in all things confirmed, and the decree from which this appeal is taken was based upon such report and is in all things comformable thereto.

The referee, by his report, charged the assignee with the wool and buggy as charged in the inventory, but deducted from the inventory price of the wool the sum of $348, being the amount of possible loss on the Philadelphia wool.

The referee rejected all of the assignee's claims for professional services in the various litigations connected with his trust, and also the professional services of the law firm of which he was a member, except a charge of $500 for services in preparing and making his final accounts before the County Court, and the assignee excepted to the decision of the referee in rejecting such claim for services, and the contestant, the bank, excepts to the allowance of the $500 on the accounting.

There were some other items of account charged against the assignee, to which he excepted, but we think that there was sufficient evidence before the referee to uphold his report in reference to such items, so that the principal questions left for consideration on this appeal by the assignee is whether the items of counsel fees and legal services rendered by the assignee, and the assignee and his partner, as attorney and counselor in the various litigations in which he was involved as assignee, were properly rejected by the referee and excluded by the court in making the decree.

The referee does not find the assignee guilty of bad faith in incurring these legal expenses, but assumes that if he acted in good faith he was guilty of grave errors of judgment. The referee, upon the theory that the assignee acted in good faith, allowed him credit for all disbursements in these litigations, for which vouchers or satisfactory proofs are furnished, but rejects all charges for professional services performed, either by the assignee or the assignee and his partner.

The rule has long been settled, both in England and this country, that while a trustee may, for necessary services, employ clerks,

agents and attorneys in the necessary management of his trust estate, he cannot perform such outside services and be compensated for them out of the trust estate; and this rule seems to be founded upon a sound principle of public policy of removing from the trustees all temptation for involving the trust estate in complication or controversy with the purpose of increasing the trustee's compensation.

There is great force in the contention of the assignee that some of these services were rendered in successfully defending himself .from a proceeding for his removal, instituted and conducted by the bank, as a creditor of the assigned estate, which it was the duty of the assignee to resist, and there is little doubt but that if these professional services had been rendered by an attorney employed by the assignee and not by himself and partner, he could have paid them out of the assigned estate a reasonable compensation which could have been credited to him on his accounts, and the same may be said of some of the other litigations in which he was involved, in his efforts to .marshal and to protect the assets of the assigned estate.

But he cannot, for that purpose, employ himself either as an individual or firm and charge such services against the estate. Such authority, if provided for in the assignment, would render it fraudulent and void. (*Nichols* v. *McEwen*, 17 N. Y., 22.) In this case the court say, in speaking of the commissions as compensation of an assignee : " They (commissions) are permitted in deference only to the analogies of the statutes on the subject of executors, guardians, committees and official assignees.   *   *   *   But even in those cases no assignee, even if he be a lawyer, is ever allowed his expenses, costs, charges and commissions, together with a reasonable counsel fee." In *Campbell* v. *Woodworth* (24 N. Y., 306) the court say : " The compensation or commission which the law allows, is for the labor, time, services and attention of the assignees actually done, spent, given and bestowed in and about the business of the trust created. It is for the performance of these services that the law has fixed a certain rate of compensation, which is denominated as commissions, and has adjudged that such rate of compensation is just and reasonable in all cases."

In the *Matter of the Bank of Niagara* (6 Paige, 215) the chancellor uses this language : " The employment of counsel and the pay-

ment of a proper allowance for such services, when necessary, requires the exercise of sound discretion on the part of the receivers or the trustee of the fund, out of which such services are to be paid. It would, therefore, be as unsafe to allow a receiver or trustee to contract with and pay himself for such extra services as it would be to allow him to become the purchaser of trust property, which it is his duty to sell to the best advantage for the benefit of the estate. * * * No allowance for extra counsel fees to himself can, therefore, be made to a receiver or other trustee upon the settlement of his accounts."

These cases were commented on and approved in *Collier* v. *Munn* (41 N. Y., 143), and the doctrine was again repeated, that an executor or trustee cannot receive from the estate any greater compensation than the statute commissions for his own services, however meritorious or extraordinary they may be.

This case arose when an executor, who was an attorney, at the instance of the co-executor, and the legatee of the personal and devisee of the real estate soliciting him, defended an action of ejectment prosecuted to recover real estate, claimed as a part of the property of the testator, and the co-executors and devisees agreed to pay him for such services, and the court, in concluding its opinion in this case, uses this language:

"With the unreasonableness of the resistance to this claim of the appellant, which, in this case, is for valuable service rendered in good faith, far beyond what his duties as executor required, or with the eminent propriety of payment by the adult legatees for a service from which they have apparently derived so considerable a benefit, we cannot deal."

Within this rule we are not to speculate whether or not the trust estate was benefited by those professional services, as it would seem that within these decisions we have no duty left except to obey the rule of law to which we have referred

Nor do we see how, upon this appeal, we can charge the expense of the unsuccessful effort of the bank to remove the assignee upon the respondent. The cost of that proceeding ought to have been fixed, as they probably were by the order denying their application for the removal of the assignee, and if not satisfactorily disposed of by that order, it could have been reviewed on an appeal from it.

Many other questions are raised on this appeal, but we see

no error against the appellant on this appeal for which this decree can be reversed. The remaining question is as to the appeal taken by the bank from that part of the amended decree allowing the assignee $500 as costs and allowance on his final accounting.

The amended decree recites that that allowance was consented to by one of the counsel for the bank.

Upon the motion for such amendment of the decree, the question as to whether or not such consent was made is controverted by opposing affidavits, and without undertaking to pass upon the weight of evidence before the county judge upon that disputed question of fact, we are not inclined to reverse the finding of the learned county judge upon that question.

But it is insisted by the appellant on this motion, that if such consent was given it did not bind the bank. We cannot agree with this contention. The court must repose confidence in the authority assumed to be exercised by the attorneys, who are its officers. And when an attorney duly appears in open court or by a proper notice of retainer in the absence of fraud or collusion, he must be deemed as representing his client, who must be bound by his acts in the regular line of his duty. (*Palen, as Guardian*, v. *Starr*, 7 Hun, 423–425.)

In that case she (defendant) admitted that a summons was duly served upon her, that she employed an attorney to appear for her. She now denies any specific authority to her attorney to allow such judgment to be taken against her. But this is of no consequence since the attorney has general power.

The county judge having found and recited in the order the consent of the attorney for the bank under it, we think he had authority to make the allowance.

The decree should be affirmed, with costs on the assignee's appeal, and the order amending the decree, from which the First National Bank of Amsterdam appeals, should be affirmed, with ten dollars costs and printing disbursements against said bank.

Orders may be entered in accordance with this determination.

PUTNAM and HERRICK, JJ., concurred.

Decreee affirmed, with costs, and order amending decree affirmed, with ten dollars costs and printing disbursements.