## Levin et al. v. Fourth Street National Bank, Appellant.

## Levin et al. v. First National Bank, Appellant.

*Carriers—Bills of lading—Bill for injunction—Negotiation of bills—Act of June 9, 1911, P. L. 838—Appeals—Accounting—Case as precedent—Facts.*

1. If, after bills in equity have been filed, under sections 24 and 25 of the Bills of Lading Act of June 9, 1911, P. L. 838, 843, to obtain an injunction to restrain negotiation of bills of lading, the property referred to therein has been sold by agreement of the parties, the equitable proceedings should ordinarily be dismissed upon application made for the purpose.

2. If, however, the parties elect to proceed with the cases exactly as if all the outstanding issues were to be disposed of therein, the court below may so decide them and the Supreme Court on appeal

will not reverse the decrees upon the ground that the court below had no right to distribute the fund realized by the sale.

3. Where a purchaser of goods, subject to approval, pays the freight charges pending an examination of them, he is not a mere volunteer, and, on distribution of a fund realized by a sale of the goods, will be entitled to recover the sums so paid by him.

4. The controlling facts determine the value of a case as a precedent.

5. Where in a statement of account for goods about to be shipped, the purchaser is given a credit on the purchase price for a sum not specifically paid on account of the particular goods, one who discounts a draft with bill of lading attached will have a paramount right to the amount of the draft, even though he saw the account before he discounted the draft.

Argued April 11, 1923. Appeals, Nos. 302 and 303, by Fourth Street National Bank and First National Bank, from decrees of C. P. No. 1, Phila. Co., June T., 1920, Nos. 800 and 801, on bills in equity, in cases of Alan Levin et al., copartners, trading as S. H. Levin's Sons v. Fourth Street National Bank, and Alan Levin et al., copartners, trading as S. H. Levin's Sons v. First National Bank. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed with modification.

Bills in equity for injunctions. Before SHOEMAKER, P. J.

The opinion of the Supreme Court states the facts.

Decrees for plaintiffs. Defendants appealed.

*Errors assigned* were, inter alia, decrees, quoting them.

*Edward Hopkinson, Jr.*, with him *Roland C. Heisler*, for the Fourth Street National Bank, appellant.—The purchase of the drafts on the security of the bills of lading vested title in the banks: Harrison v. Mora, 150 Pa. 481; Richardson v. Nathan, 167 Pa. 513; First National Bank of Chicago v. Hartzell, 55 Pa. Superior Ct. 56; Sturgeon Bay Bank v. McLaughlin, 63 Pa. Superior Ct. 588; City National Bank v. Isenberg, 59 Pa. Superior

Ct. 162; Acker v. Delp, 76 Pa. Superior Ct. 447; Dows v. Bank, 91 U. S. 618; Means v. Bank, 146 U. S. 620.

The negotiations for settlement could not divest the title of the bank.

Plaintiffs had no lien for the voluntary freight payments: Lackawanna T. & S. Dep. Co. v. Gomeringer, 236 Pa. 179; Hoover v. Epler, 52 Pa. 522; Campbell v. Home Assn., 163 Pa. 609; Account of Commercial Trust Co., 247 Pa. 508.

The court below had no jurisdiction over the question: Harrison v. Mora, 150 Pa. 481.

Plaintiffs had no lien for its advances to the packing company.

*Joseph S. Clark* and *Paul C. Wagner,* for the First National Bank, appellant.

*L. Stauffer Oliver,* for S. H. Levin's Sons, appellees.— The packing company had an attachable interest in the salmon.

The banks took the bills of lading as security for the payment of the drafts: Mifflintown Bank v. Bank, 247 Pa. 40.

Having taken the bills of lading as security, the banks acquired a property or interest therein only to the extent necessary to protect their advances: Leonhardt v. Small, 117 Tenn. 153; Tolerton & Stetson v. Bank, 84 N. W. 930; Goetz v. Bank, 119 U. S. 551; Franklin Trust Co. v. R. R., 222 Pa. 96.

Under the law of Oregon the banks did not acquire title to the salmon: Henry v. Warehouse Co., 81 Pa. 76; Brooks v. R. R., 108 Pa. 530; Lad & Tilton Bank v. Bank, 130 Pac. 975.

Plaintiffs, as creditors of the true owner, had a right to attach the salmon, subject to the interest of the banks: Cessna Est., 192 Pa. 14; Richardson v. Nathan, 167 Pa. 513; Phillip's Est., 205 Pa. 525; Megee v. Beirne, 39 Pa. 51.

Plaintiffs were entitled to reimbursement of freight charges and advancements.

OPINION BY MR. JUSTICE SIMPSON, April 30, 1923:

These two appeals will be decided in a single opinion; the cases were tried together in the court below, were argued together here, and admittedly the questions involved are the same.

For a number of years prior to 1917, plaintiffs had been purchasing salmon from the Tallant-Grant Packing Company of Oregon, which then owed them a considerable sum of money. In that year they advanced it an additional amount of $14,000, to be credited on the price of fish to be thereafter contracted for and delivered. Subsequently they agreed to purchase a quantity of high-grade salmon, subject to examination and approval. As a result, the packing company sent four carloads which, on arrival at destination, were stored by the carriers in two warehouses, to be there held until the freight was paid and the bills of lading surrendered. Plaintiffs paid the freight on three of these cars.

When the shipments were made, the packing company drew four drafts, each covering the purchase price of one carload, less a proportionate part of the $14,000 advancement. For full value, two banks in Oregon discounted the drafts, with the bills of lading attached, credited the packing company with the net balance, and it later checked out the entire amount. Two of the drafts, with the accompanying bills of lading, were forwarded to each of the present defendants, as collecting agents.

Upon inspection by plaintiffs, the salmon was found to be of inferior quality, and hence was rejected. For some time thereafter negotiations were had between plaintiffs and the packing company, the latter endeavoring, by monetary allowances, to induce the former to reconsider their rejection. Of this the Oregon banks had knowledge, and do not seem to have notified plaintiffs of the facts regarding the discount of the drafts; nor, on

the other hand, does it appear that plaintiffs made any inquiry on the subject, though knowing the Oregon banks held or owned the bills of lading, and, without their surrender, the salmon could not be obtained from the warehouses.

When the negotiations fell through, plaintiffs issued a writ of foreign attachment against the packing company, attached the four carloads of salmon, and, in accordance with sections 24 and 25 of the Bills of Lading Act of June 9, 1911, P. L. 838, 843, filed in the court below two bills in equity, one against each of these appellants, to enjoin the negotiation of the bills of lading. Preliminary injunctions were granted, which were later continued until final hearing, answers were filed and testimony taken, pending which, by agreement of the parties, the contents of the cars were sold and the proceeds are being held to await the final determination of these proceedings.

On proper application, this would have resulted in a dismissal of the bills in equity, for the purpose of their filing had been fully accomplished, the bills of lading could no longer be negotiated, and the rights of the parties to the fund (which was insufficient to pay either the drafts or the judgment in the foreign attachment), would normally have been elsewhere heard and determined. No request was made to dismiss them, however. On the contrary, the parties went on with the cases, exactly as if all the outstanding issues were to be therein decided; they continued and concluded the taking of testimony before the trial judge, submitted to him requests for findings of fact and law without questioning his right to distribute the fund, filed exceptions to his adjudication, and when they were dismissed and final decrees entered, the banks prosecuted the present appeals, which, of course, under the circumstances stated, must be considered as involving no question of power in the court below. For this reason we overrule the request now

made to reverse the decrees because that court had no right to make distribution of the fund.

The only other question raised on this record, is whether it was error not to award the whole amount to the Oregon banks, instead of directing, as was done, that plaintiffs should receive out of it, (1) the sums paid by them for freight charges, and (2) an item of $1,500, a proportionate part of the $14,000 advanced by them to the packing company, because the $1,500 appeared as a credit upon the purchase price of one of the carloads, on a statement exhibited to the bank, when a draft, with the bills of lading attached, was given for the balance shown by that account.

The banks alleged the freight charges should not have been allowed because plaintiffs were mere volunteers in paying them. This is not correct, however. They were neither volunteers nor intermeddlers; the salmon was intended for them and they expected to accept it and pay the draft. Payment of the freight was a condition precedent to its receipt by plaintiffs as purchasers, or the banks as holders of the bills of lading. That the former paid it, at a time when they expected to take the salmon, does not alter the fact that the latter ought in equity to repay it when, as the event happened, the fish was properly rejected because of its bad quality. Not until after that time could any question of subrogation possibly arise, and, when it did, there is no doubt that in good conscience the bank should return the money which was paid in order to satisfy the paramount claim of the carriers: Lackawanna Trust & Safe Deposit Co. v. Gomeringer, 236 Pa. 179; Donnan v. Barnes, 272 Pa. 33. There is broad language used in the first of these cases (greatly relied on by appellants), which, if considered aside from its facts, might be understood as leading to a different conclusion than as above stated. It has no value as a precedent, however, aside from its controlling facts (Cohens v. Virginia, 6 Wheaton 264, 397; O'Malley v.

O'Malley, 272 Pa. 536), and when thus considered it discloses nothing to convict the court below of error.

The award of the $1,500 raises an entirely distinct question. Plaintiffs' advancement of $14,000 to the packing company was not on account of these particular shipments, and they had no right to demand that any part of that sum should be paid to them on a sale of the fish, but only that it should be credited on the purchase price, if they paid the balance represented by the drafts. The mere fact that the banks knew, when they discounted the drafts, that such an allowance would be made if the salmon was accepted and paid for, gave to plaintiffs no claim upon the proceeds of sale, when they were rejected. Each claimant was an innocent party; plaintiffs risked their money without then or thereafter having a lien on this particular lot of salmon; the banks risked theirs also, but their claim was a specific charge on these shipments from the beginning, and plaintiffs could not have obtained the salmon until they paid that claim.

The decree in the suit against the Fourth Street National Bank is modified by striking out the allowance to plaintiffs of the sum of $1,500, part of the "net proceeds of the sale of the contents of car No. 18430"; in all other respects the decrees are affirmed and the appeals are dismissed at the cost of the respective appellants.