# Sheaffer's Estate (No. 1).

*Interest—Claims against United States—Interest on payment made to United States—Principal and surety—Distiller's bond—Taxes—Subrogation—Priority—Counsel fees—Costs.*

1. In the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States on unpaid accounts or claims.

2. Where a party secondarily liable pays taxes due the United States government, a claim for interest against the principal is a matter of right.

3. The surety on a bond given to the United States who has paid the principal's debt to the government in a definite sum, has a liquidated claim against the principal for the amount of the interest from the date of the payment.

4. Where a surety pays the debt of his principal, he is subrogated in equity not only to the securities of the creditor, but to all his rights of priority.

5. Where the surety on a distiller's bond pays money to the government on account of his principal, he is entitled to be subrogated to the rights of the government, and the claim is entitled to priority.

6. The government's claim for taxes paid by the bondsman fixes the latter's claim to priority over the creditors of the deceased principal for interest as well as counsel fees, and this is especially so where it appears that the principal in his lifetime, with the consent of his creditors, had agreed that the surety should receive what was due him less interest, costs and expenses from any moneys recovered from the government through his intervention.

Argued May 20, 1924.   Appeal, No. 349, Jan. T.,
1924, by P. E. Slaymaker, administrator of Mary A.
Sheaffer, a creditor, from decree of O. C. Lancaster Co.,
May T., 1923, No. 22, dismissing exceptions to adjudi-
cation in estate of Jacob F. Sheaffer, deceased. Before
FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.
Affirmed.

Exceptions to adjudication.  Before SMITH, P. J.

The opinion of the Supreme Court states the facts.

The resolution of the United States Senate of March 2,
1903, (46 a), was as follows: "The claim of Clayton
G. Landis, administrator of David B. Landis, deceased
—for internal revenue paid to the United States by the
said decedent, surety on the bond of Jacob F. Sheaffer,
distiller, be and the same is hereby referred to the court
of claims with full jurisdiction to try, adjudicate and
determine said claim, and render judgment in the claim-
ant's favor for such amount as may be found just and
due by said court."

The court awarded priority of payment to the claim of
the Landis estate, to which other creditors filed excep-
tions.

Exceptions dismissed.  P. E. Slaymaker, administra-
tor of Mary A. Sheaffer, deceased, a creditor, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*John A. Coyle,* for appellant.—The judgment of the
court of claims, together with the act of Congress order-
ing the payment of the money, superseded the prior
agreement between Landis and Sheaffer, dated February
22, 1897; the status of the final accounting, between them
was fixed as of that date and in those amounts.

The orphans' court cannot review the judgment of
the court of claims.

The Landis estate should bear its proportion of coun-
sel fees.

*Benjamin C. Atlee,* for appellee.

OPINION BY MR. JUSTICE KEPHART, July 8, 1924:

Jacob F. Sheaffer, distiller of liquors in the City of Lancaster, was assessed a revenue tax of $43,016.40 by the federal government; it was unpaid when the warehouse and whiskey was destroyed by fire. The government refused to abate the tax; Sheaffer's effects were seized, and proceedings begun to enforce collection. About the same time executions were issued by others, and Sheaffer's personal property was levied on. David B. Landis was the responsible surety on the bond for the payment of taxes, and the one to whom all parties looked for relief. An agreement was made between Sheaffer and Landis, consented to by the execution creditors, wherein it was recited that, as "all parties desire to prevent sacrifice of the property and sale of the same under seizure," Sheaffer should turn over the real and personal property to Landis. Private sale thereof was to be made by or through Landis, who, after having "realized the entire amount of revenue tax paid by him, together with the interest and costs thereon, he shall reconvey, assign, transfer and set over unto Sheaffer" any balance. It was further stated in the agreement that, "if, at any time, the whole of the tax thus paid, or any part thereof, shall be rebated, repaid or remitted to Landis or Sheaffer, or both or either of them, by the act of the Internal Revenue Department, or by act of Congress, or by any authority of the United States government, Sheaffer is to receive due credit and allowance for the same, less interest and all costs and expenses, in the matter of accounting between him and Landis," it being agreed the repayment was to be made to the latter. Landis paid to the government $45,167.22.

The parties, believing this payment to be unjust because of the fire, took immediate steps to have the money refunded. Landis made various efforts to have the case reopened, but died in 1898, without accomplishing any-

thing.  His son, Clayton, as administrator, continued this work.  Through his efforts, Congress, in 1903, referred the entire matter to the court of claims.  (The act will be found in the report of this case.)  Under it that court had jurisdiction to try, adjudicate and determine the claim and render judgment in claimant's favor for such amount as may be found just and due by said court, without regard to the statute of limitations.

Landis's administator presented his petition averring as due him the sum of $45,167.22.  Sheaffer's administrator presented a cross-petition, setting forth there was due the Landis estate only the sum of $11,112.22, and to the Sheaffer estate $34,055.  The answer to the cross-petition admitted these averments, and joined in asking the court to report to the United States Senate the sums thus set forth as being due and unpaid to the two estates.  An order was accordingly so made and Congress directed the tax to be refunded, the last named sums being paid in 1923, eighteen years after payment by Landis.

Sheaffer's estate came on for settlement; the Landis estate presented a claim for interest and counsel fees paid on account of the prosecution of the claim before Congress and the court of claims.  The Orphans' Court of Lancaster County allowed both in the sum of $15,-981.18, and from that decree this appeal is taken.

Did the judgment of the court of claims fix the status of the parties in the accounting to be made between them, or was it merely definitive of their exact status as it related to the tax paid to the government, reduced afterwards as between the parties through reimbursements from sales of property?

The agreement provided for interest in the most explicit language.  The money was paid in 1897; Landis and Sheaffer died shortly thereafter.  In the first settlement of Sheaffer's estate in 1899, Landis's administrator, at the audit, then presented a demand for interest, and

was allowed $6,000. As the estate was insolvent, practically nothing thereon was paid.

"The rule is that, in the absence of a stipulation to pay interest or a statute allowing it, none can be recovered against the United States upon unpaid accounts or claims: United States v. Rogers, 255 U. S. 163, 169; United States v. North American Transportation & Trading Co., 253 U. S. 330; United States v. North Carolina, 136 U. S. 211, 216; Angarica v. Bayard, 127 U. S. 251, 260; Harvey v. United States, 113 U. S. 243." See also Seaboard Air Line Railway Co. v. United States, 261 U. S. 299, 304. But, where a party secondarily liable pays taxes due the government, a claim for interest against the principal is a matter of right. The surety on a bond given to the United States who has paid the principal's debt to the government in a definite sum, has a liquidated claim against the principal for the amount paid with interest from the date of payment: American Surety Co. v. Carbon Timber Co., 263 Fed. 295.

When the matter came before the court of claims it involved primarily the relation between the United States and Sheaffer, concerning the assessment, the destruction of the property and payment of the tax thereon by his bondsman. The proceeding was to determine whether the government unjustly collected a sum of money as revenue when the goods taxed were destroyed by fire. Having decided this payment to be wrong, that court recommended a return of the sum in the respective amounts named in the report. The only matter then before the court of claims was the ascertainment of the amount to be returned, if any. It in no way involved an accounting between the surety and principal. This phase of the matter was governed by the agreement and the decree of the orphans' court of this State finding a sum due as interest to the Landis estate. The government was not interested in the conflicting claims of principal and surety. Suppose Sheaffer's claim had been

controverted. The court of claims would hardly, under its limited power, determine the relative rights between the parties. Had the full amount of the claim been turned over to Landis's estate as agreed upon, even with notice to Sheaffer, the former estate could not have retained the entire sum; an accounting was bound to take place through the same medium as Landis now compels it. Landis had, prior to 1899, been reimbursed from sales $34,000; the orphans' court at that time so found, and it was a matter of record that there was only a balance of $11,000 due to Landis. The act allowing the procedure designated Landis's estate to receive the money, if any was found to be due. The petition of the latter estate to the court of claims was sufficient to protect all parties, and when Sheaffer's administrator filed the cross-petition it had a tendency to make federal relief more difficult; moreover, it related to events subsequent to the time of payment to the government.

It is quite likely a more favorable consideration would be given to a surety's claim for tax paid on property destroyed by fire than to a principal's. To have averred in the claim petition the respective equities of the parties, including an interest charge, even though it must come out of the principal, would have only embarrassed the effort to secure a return of the money.

The legal effect of the finding of the court of claims, as far as relates to the parties, did nothing more than fix their status as to the receipt from the government of the sums mentioned. It neither considered nor settled the accounting or other rights and obligations between them.

The question we are now considering was not before the court of claims in any aspect. While it may be based on the fact that it arose because of the principal sum paid to and received back from the government, the ascertainment of the latter amount was entirely separate from the claim for interest, counsel fees and accounting between principal and surety. These matters were

not before the court of claims. This distinguishes the case from Myers v. International Trust Co., decided by the Supreme Court of the United States, October Term, 1923.

Appellee's claim was rightfully allowed as a preference. The doctrine is well established that where a surety pays the debt of his principal, he is subrogated in equity not only to the securities of the creditor, but to all his rights of priority: 25 R. C. L. 1382, section 65; Com. v. Marsh, 149 Pa. 239. Where the surety on a distiller's bond pays money to the government on account of his principal, he is entitled to be subrogated to the rights of the government and the claim is entitled to priority: Lewis's Adm'r v. U. S. Fidelity & Guaranty Co., 144 Ky. 425; Reed v. Emory, 1 S. & R. 339, 37 Cyc. 426; Levin v. Fourth Street Bank, 277 Pa. 350, 355.

The government's claim for taxes paid by the bondsman does fix appellee's claim to priority for interest as well as counsel fees. The latter is governed by the agreement in its entirety. It was undoubtedly the intention of Landis and Sheaffer that Landis should be made entirely whole, if at all possible, and in sound morals it should be so. Sheaffer did the only fair thing possible, —provide to the limit of his ability for the protection of his uncompensated bondsman, Landis. It was the latter who paid the tax. It was solely through his efforts that anyone has received anything from the government.

The objection by the two execution creditors to the interest and counsel fees being made a preferred claim cannot be sustained for the following reasons: (1st) The government had a prior lien and could have taken all of Sheaffer's property from them as execution creditors (the plan here adopted and to which they assented was the only one whereby it was possible for them to receive anything). (2d) They are estopped by their own act from asserting rights to the contrary. (3d) The terms of their agreement and rights established thereunder

deny to them the right to contest this payment.   (4th)
On the principles of subrogation; and (5th) the money
was in reality Landis's money.

Decree affirmed.