**In re LEVEL CLUB, Inc.**

District Court, S. D. New York.

Feb. 3, 1931.

I grant the motion to vacate the order extending bankrupt's time to answer.

I. The result of all these motions, except the motion to vacate the order appointing a receiver, is entirely dependent on the result of the motion to set aside the adjudication.

The relevant facts regarding that motion are as follows:

On November 21, 1930, the secretary of the Level Club was served with a subpoena and petition for involuntary bankruptcy.

Without consulting the board of governors of the club, the secretary communicated with William W. Conrad, Esq., who is a member of the club, and also of the law firm of Conrad, Rubin & Lesser.

The secretary inquired of Mr. Conrad whether the papers served on him constituted an adjudication in bankruptcy or merely the institution of a proceeding for that purpose. Mr. Conrad advised the secretary that the papers merely involved steps looking to such adjudication, and asked whether he should appear for the club and consent to an adjudication. The secretary instructed him to do so and he followed the instructions.

It is the adjudication thus secured that the first motion here involved seeks to have vacated on the ground that the board of governors never passed any resolution agreeing to such adjudication, as it is claimed would be necessary in the case of a voluntary bankruptcy.

II. The moving party, who is now represented by a new firm of lawyers, seems, for the purpose of this motion, to forget that an involuntary petition in bankruptcy is a proceeding by third parties against the bankrupt in invitum like any other proceeding, and, therefore, that there are parties other than the bankrupt to be considered.

Jenks & Rogers, of New York City, for Level Club, Inc. (Gustavus A. Rogers, of New York City, of counsel), in support of motions Nos. 1, 2, 3, and 4, and in opposition to motion No. 5.

Joseph Krinsky, of New York City, for petitioning creditors, in opposition to motions Nos. 1, 2, 3, and 4, and in support of motion No. 5.

Levy, Kraus & Leman (by J. L. Kraus, 2d), of New York City, for Irving Trust Co., in opposition to motions Nos. 1, 2, 3, and 4, and in support of motion No. 5.

WOOLSEY, District Judge.

I deny the motions (1) to vacate the adjudication, (2) to vacate the receivership order, (3) to vacate the order for examinations under section 21a, and (4) to dismiss the petition in bankruptcy.

Furthermore, as in all cases, there is here involved the court itself, which must keep a watchful eye on its processes and on the successive steps in litigations pending before it.

The administration of justice would be reduced to chaos if, whenever an attorney had a new idea in regard to a step which had been taken by his client in a litigation, he could get it reversed, not because any fraud was involved, but because he or his clients had changed their minds.

Such never was and never can be the law.

Considered steps in a litigation taken by a member of the bar of a court are binding on his client unless fraud be shown. The apparent authority of attorneys in any proceed-

ing before the court is plenary so far as the court and the opposing parties are concerned, for necessarily it must be adequate to all the exigencies of litigation. To be agents with such authority is one of the reasons for the existence of the Bar.

In Tatum v. Maloney, 226 App. Div. 62, 234 N. Y. S. 614, Mr. Justice Merrell, in writing the opinion of the court which involved a question of the effect of a general appearance in Mississippi by a firm of attorneys, said at pages 67, 68 of 226 App. Div., 234 N. Y. S. 614, 619:

"The defendants admit that they personally authorized the Mississippi attorneys to appear specially, and that they paid said attorneys for their services. Subsequently the Mississippi attorneys appeared generally and ultimately judgment was rendered in the circuit court of Mississippi against the defendants appellants. It is admitted by the defendants appellants that they authorized an appeal to be taken to the Supreme Court of Mississippi from the judgment of the circuit court of that state, and it is the undisputed fact that the Supreme Court of Mississippi affirmed the judgment of the trial court. I think there is no disputed question of fact here. As to whether or not the Mississippi attorneys had secret instructions from the defendants appellants, and as to what the instructions were, the plaintiff is, of course, ignorant. The defendants do not deny such instructions, and, therefore, there is no issue thereon. Having employed the Mississippi firm of attorneys to represent the defendants, I think the defendants should be bound by the action of their said attorneys, upon the court's overruling their special appearance, in appearing generally in the action and asking leave to defend upon the merits. Although the attorneys may have exceeded their authority, I think the defendants should be bound by their acts. As was said by Boardman, J., in Palen v. Starr, 7 Hun, 422, at pages 423, 424: 'It will not do to allow proceedings regularly had by attorneys, lawfully appearing for the respective parties, to be questioned by their clients for want of specific authority in the absence of fraud.'

"In Matter of Maxwell, 66 Hun, 151, at page 156, 21 N. Y. S. 209, 212, Presiding Justice Mayham, writing for the General Term, Third Department, Putnam and Herrick, JJ., concurring, said: 'The court must repose confidence in the authority assumed to be exercised by the attorneys, who are its officers. And when an attorney duly appears in open court or by a proper notice of re-

tainer in the absence of fraud or collusion, he must be deemed as representing his client, who must be bound by his acts in the regular line of his duty.' Here there was no allegation of fraud on the part of the attorneys appearing generally for the defendants. They were employed by the defendants, who had notice of all proceedings in the Mississippi action."

Mr. Justice Proskauer, concurring in the same case, said at page 68 of 228 App. Div., 234 N. Y. S. 614, 620:

"The defendant having retained the Mississippi attorney was bound by the action of these attorneys in the conduct of the litigation, even though they exceeded the limitation placed upon their authority. Palen v. Starr, 7 Hun, 422; Matter of Maxwell, 66 Hun, 151, 21 N. Y. S. 209; Butcher v. Quinn, 86 App. Div. 391, 83 N. Y. S. 700; Ferguson v. Crawford, 70 N. Y. 253, 258, 261, 26 Am. Rep. 589. The situation in this respect is entirely different from the one which exists in cases like Famobrosis Society v. Royal Benefit Society, 166 App. Div. 593, 152 N. Y. S. 84, where the attorney's appearance was wholly unauthorized or where fraud was involved."

The decisions are many in which an affirmative act by an attorney, such as securing an extension of time to answer or appear, or the removal to a federal court of a case, which is subsequently remanded to the state court, is held to constitute, though unintentionally, a general appearance from which his client cannot escape. For example, see Hupfeld v. Automaton Piano Co. (C. C.) 66 F. 788, 789, per Lacombe, J., and Farmer v. National Life Association of Hartford, Connecticut, 138 N. Y. 265, 271, 33 N. E. 1075, and cases there cited.

It is obvious that, in the absence of clearly established fraud, an intentional act of an attorney in a litigation—such as the appearance and consent to an adjudication here involved—cannot be set aside. If there is any dispute as to whether such an act by an attorney in a litigated case was authorized, it is a matter which must be dealt with between the attorney and his client, for it involves their private relations only and not their relations to the Court or to the opposing parties.

But quite aside from the general principle involved, a bankruptcy case is cited by Mr. Kirinsky which is conclusive against the granting of this motion.

In Leiter v. Republic Fire Ins. Co., 7' Biss. 26, 15 Fed. Cas. page 274, No. 8,227, an involuntary petition in bankruptcy was filed against the insurance company under the Bankruptcy Act of 1867 (14 Stat. 517). The company appeared by counsel in pursuance of authority from officers of the corporation, filed a waiver of the rule to show cause, confessed the acts of bankruptcy set forth in the petition, and consented to an immediate adjudication, which was accordingly rendered.

Motion was made to set aside this adjudication principally on the ground that counsel had not been duly authorized to confess the acts of bankruptcy because a corporate act was required for that purpose.

The motion was denied in the District Court and went to the Circuit Court on petition to review.

Judge Drummond, in the Circuit Court, affirmed the District Court and dealt with the matter so fully and so wisely that I quote from his opinion in extenso. He said at page 274 of 15 Fed. Cas. (No. 8,227):

"Petitioners here insist that the provisions of the 37th section of the bankrupt law (of 1867 [14 Stat. 535]), which declares that a petition may be filed by a corporation, when authorized by its corporators so to do, at any regular meeting called for the purpose, also apply to the case of an involuntary proceeding, against a corporation, by a creditor; in other words, that inasmuch as, before a petition can be filed by a corporation, there must be a vote of the corporators authorizing it; so, when a petition is filed against a corporation, by a creditor, there must also be a vote of the corporators to authorize counsel to appear and consent to an adjudication of bankruptcy, or to admit the acts of bankruptcy alleged.

"I do not think that it is the true construction of section 37. Congress, in authorizing the application of the provisions of the bankrupt law to corporations, thought it necessary (inasmuch as there might often be a question among the members of a corporation, whether, in a given case, it would be proper to apply for the benefits of the bankrupt law,) to declare that question should be settled in a particular way, namely, by a vote of a majority of the corporators, and, therefore, provided that application should be so made to the court.

"This provision refers to the case of voluntary proceedings. But in case of involuntary proceedings against a corporation it is to be inferred, unless there is some restriction in the law, that the usual course will be adopted, and matters proceed as in ordinary cases where legal measures are instituted against corporations; namely, that they will have the power to appear by counsel, be subject to the rules of pleading known and sanctioned by the courts, and that there will be the usual confidence existing between counsel and client in such cases; and that counsel will not do any act unauthorized by the corporation.

"It might be said, with as much reason, that where a corporation is made an involuntary party, indirectly or collaterally, in a bankruptcy proceeding, counsel could not appear to represent it, unless expressly authorized by a vote of the corporators or shareholders; and that would hardly be contended.

"It is conceded by petitioners here, that, if the proceedings had gone on in the usual way—if there had been a default and adjudication in bankruptcy rendered, or an appearance by counsel and a hearing or trial, and verdict and a decision of the court making an adjudication—a vote of the corporators would be immaterial, but it is denied that the rule applies to the case of appearance and of a cognovit made by counsel.

"The necessity for resorting to a vote of the corporators would not seem to exist, in as great degree, in one case, as in the other.

"The corporation, in this case, was not a volunteer. It was compelled to come into court, and plead, in conformity with the rules of the court. As it could appear by counsel without a vote of the corporators, there was nothing to prevent counsel, when warranted in so doing by the regular agents of the corporation, from admitting the acts of bankruptcy stated in the petition, provided, upon a proper examination they were satisfied that the allegations were true, and that a trial, or hearing, would involve unnecessary expense and delay, and be of no advantage to the corporation itself or its creditors.

"There is no question made as to the authority having been given counsel by the proper officers of the corporation, nor of the good faith of either, nor of their having acted upon the subject matter after proper inquiry. All these points must be assumed in favor of the acts of counsel and of the officers of the corporation.

"The question is, then, simply as to the authority of the corporation to act through counsel in the manner pursued here, and the case would hardly seem to be one calling very

stringently for the exercise of the power of interference of the district court or of this court."

There has not been any case cited by the attorney now appearing for the bankrupt which is in point to support his motion.

The principal criticism made by him of Judge Drummond's apt decision is that it was rendered whilst the Bankruptcy Act of 1867 (14 Stat. 517) was in force and has not been cited in any recent text-book on bankruptcy.

Fortunately common sense did not lapse with the Act of 1867, and if Judge Drummond's case has not been cited, that fact merely constitutes another illustration of the wholly unwarranted neglect on the part of present day writers and practitioners of the invaluable decisions which are contained in the Federal Cases. In the days covered by those reports the justices of the Supreme Court went Circuit regularly, and the industrious and inquiring will find in the Federal Cases, in which reports of all the early decisions of the lower federal courts are conveniently assembled, an almost inexhaustible field in which to trace the authentic sources of our federal jurisprudence. An excellent recent instance of the value of these reports is found in Marshall & Co. v. The President Arthur, 279 U. S. 564, 49 S. Ct. 420, 73 L. Ed. 846, in which the decision of the Supreme Court on a nice question of law was apparently based on the authority of the decisions of former justices thereof, rendered separately on Circuit, and in which the opinion contains five citations of such decisions from the Federal Cases.

■ III. But even if authority and common sense were not conclusive against granting the relief here asked, there would not be ground even for setting aside a default entered on failure of any appearance. For the bankrupt shows no reason why the adjudication should not stand.

There is not any question but that the bankrupt falls within the category of parties subject to the Bankruptcy Act. Cf. Supreme Lodge (D. C.) 286 F. 180, 2 A. B. R. (N. S.) 429.

Furthermore, I do not find any showing which satisfies me that if the adjudication should be set aside it would mean anything more than unnecessary delay and extra work for everyone concerned, to be followed by a like adjudication some months hence.

IV. With the denial of the motion to vacate the adjudication, the motion to set aside the order for examination under section 21a (11 USCA § 44(a) and the motion to dismiss the petition in bankruptcy must fail; and in view of this decision the motion to vacate the order extending the time to answer must be granted.

V. The only motion to be separately dealt with, therefore, is the motion to vacate the order appointing a receiver.

■ There is not any conflict between the state court receivers, appointed on foreclosure of the mortgage, and the receiver in bankruptcy of the bankrupt's personal property. Of what that property may consist does not appear in detail on the papers before me, but it is obvious that a hotel club of this kind must have a large amount of furniture and other embellishments as well as utensils for varying kinds of domestic use. There may also be dues from members to be collected and possible assets of other kinds to be assembled wholly independent of the real property, and the rents therefrom.

The motion to set aside the receivership is therefore denied.

Settle orders in accordance with this opinion on two days' notice.