## General State Authority v. Hineline

*Elmer D. Christine* and *H. Warren Ragot,* for appellant.

*Robinson & Hoffner* and *Mervine, Brown & Newman,* for condemnees.

WILLIAMS, P. J., July 19, 1972.—This is a motion and rule by counsel for Jack Harlan Hineline, Executor of the Estate of Joseph Hineline, deceased, Catherine Hineline, widow, Harry Hineline and Anna Marie Hineline, his wife, condemnees, to quash an appeal nunc pro tunc from a report of the board of viewers, awarding the condemnees $168,000 damages and filed on November 20, 1970, which was filed 75 days thereafter on February 3, 1971, by H. Warren Ragot, Esq., on behalf of the General State Authority, condemnor. Mr. Ragot is the incumbent Assistant General Counsel to the General State Authority in charge of land acquisition. Elmer D. Christine, Esq., who originally was, and still remains, the local attorney of record for the condemnor, has not joined in filing or pressing this appeal, except that he appeared for condemnor on one occasion to take the deposition of H. Warren Ragot, Esq. Appropriately, the motion to quash is

based upon facts already apparent on the face of the record. Condemnor's unsworn answer goes beyond pointing to a matter of record, namely: (1) Failure of the board of view to give 10 days' prior notice of their *intention* to file the report, required by section 513 of the Eminent Domain Code of June 22, 1964, Sp. Sess., P. L. 84, as amended, 26 PS §1-513, and seeks to introduce new factual allegations here made for the first time; (2) "Condemnor had requested its local attorney Elmer D. Christine to file the same [i.e., the appeal] within the time allowed, to wit on December 21, 1970; and he was unavailable on said date and since has refused to take further action," and (3) "(T)he State Legislature . . . (had) authorized only $100,000 for the premises condemned." Condemnees replied that the requirement of notice had been waived; that, lacking knowledge, they demanded proof of item (2) if relevant; and that both items (2) and (3) were irrelevant. To aid in resolution of the factual issues, depositions were taken on April 7, 1971, and again on May 25, 1971. On the first occasion, Charles Whitehill, Esq., attorney for the General State Authority, objected to taking the deposition of Elmer D. Christine, Esq., on the ground that communications between Mr. Christine, as local attorney, and personnel of the General State Authority, as client, were privileged. It is true generally that confidential communications between attorney and client are privileged (Lumbermens Merchandising Corporation v. Insurance Company of North America, 43 D. & C. 2d 715, 721 (C. P. Delaware Co., 1968)); but when the client, as here, alleges a breach of duty to him by the attorney, the privilege is waived as to all communications relevant to that issue: 8 Wigmore (McNaughton rev. 1961), §2327(6); Annotation, 51 A.L.R. 2d 521; Annotation, 98 A.L.R. 2d 241. The rationale has been well stated

in Laughner v. United States, 373 F. 2d 326, 327 (5th Cir., 1967), where Chief Judge Tuttle said:

"We are met first with the remarkable contention that appellant's rights were infringed upon by reason of the fact that the attorney he charged with failure to represent him adequately at his arraignment and sentencing was called as a witness by the government and permitted by the court to testify in this post-conviction proceeding with respect to the factual issues raised by appellant's motion. Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue."

Accordingly, on the basis of the record and the depositions, the following facts may be found:

## FINDINGS OF FACT

1. On March 7, 1967, Elmer D. Christine, Esq., local attorney, joined with Herman E. Cardoni, Esq., as "Attorneys for The General State Authority" in filing the declaration of taking for project No. C.S.A. 405-26 relating to East Stroudsburg State College.

2. At that time, the owners of the subject property were Joseph Hineline, widower, Catherine Hineline,

widow, Harry Hineline and Anna Marie Hineline, his wife.

3. Joseph Hineline died testate on March 14, 1967.

4. By suggestion filed on March 30, 1967, Jack Harlan Hineline, Executor of the Estate of Joseph Hineline, deceased, was substituted as a party to the proceeding in place of the said Joseph Hineline.

5. On September 14, 1967, the condemnor advanced to the condemnees $75,000 as a partial payment on account of the damages.

6. On October 18, 1967, in response to the petition of Elmer D. Christine, Esq., attorney for the condemnor, the court appointed C. Edward DePuy, B. K. Williams, and Arthur Switzgable as a board of view.

7. The said board viewed the premises on October 9, 1968, in the presence of Jerome P. Cheslock, Esq., and Roland O. White, on behalf of the condemnor, and George T. Robinson, Esq., Harry Hineline, and Forrest R. Smith, on behalf of the condemnees.

8. Mr. Roland O. White has been employed by the General State Authority in connection with its land acquisition programs for 10 or 12 years prior to April, 1971. Although he is not an attorney, he was, in April 1971, a land agent for the authority under the supervision of H. Warren Ragot, Esq.

9. In August, 1969, H. Warren Ragot, Esq., became an Assistant General Counsel to the General State Authority in charge of land acquisition.

10. The board of viewers held hearings for the taking of evidence and testimony on November 4 and 5, 1970, and a meeting on November 18, 1970, for the purpose of considering the testimony.

11. Before the board of viewers and in the presence of Roland O. White, the attorney for condemnor and the attorneys for condemnees orally waived all further notices required by law.

12. On November 8, 1970, H. Warren Ragot, Esq., entered the Polyclinic Hospital of Harrisburg for a hernia operation.

13. On November 20, 1970, the board of viewers filed their report, dated November 18, 1970, wherein they awarded condemnees $168,000 damages.

14. On November 23, 1970, H. Warren Ragot, Esq., returned to his office duties working half days until November 27th and full time on and after November 30, 1970.

15. The board of viewers deposited a copy of their report in the box of Elmer D. Christine, Esq., at the prothonotary's office. Mr. Christine picked it up on or about November 23, 1970.

16. On November 23, 1970, Mr. DePuy, chairman of the board of viewers, sent Mr. Christine some substitute pages correcting certain typographical errors made in the original.

17. Mr. Christine made the substitutions and mailed his copy to Mr. White with a cover letter dated November 27, 1970, which read:

"Enclosed herewith you will please find Viewers' Report in the above matter. It appears to me that the Viewers took the average per acre testimony of our witnesses, and the average per acre testimony of the Condemnees' witnesses, and then averaged those figures out and arrived at their conclusion. In any event, in my opinion, in view of the rapidly increasing market values for real estate in this area, even though a trial jury would be required to use market values as of the date of condemnation, the jury would nevertheless unconsciously reflect in its verdict the general situation. Therefore, as I view it, this could result in a substantially higher jury verdict than that rendered by the Viewers."

18. The letter of November 27, 1970, and the copy

of the report were stamped as having been received by the General State Authority on November 30, 1970.

19. On December 3, 1970, Mr. Ragot telephoned Mr. Christine, and the two discussed the letter and the copy of the report. At this time, Mr. Ragot did not instruct Mr. Christine to file an appeal.

20. The thirtieth day after November 20, 1970, on which the report was filed, fell on Sunday, December 20, 1970.

21. On Monday, December 21, 1970, Samuel W. Newman, Esq., of counsel for condemnees, happened to encounter Elmer D. Christine, Esq., at the courthouse. In response to his inquiry regarding the status of the case, Mr. Christine stated that he had received no instructions to appeal.

22. On the same day, H. Warren Ragot, Esq., made two telephone calls to Mr. Christine's office. He did not succeed in speaking to Mr. Christine, who was engaged at the courthouse with the county commissioners. Mr. Ragot left no message with Mr. Christine's secretary other than that he would like Mr. Christine to call.

23. On the same day, Mr. Ragot mailed Mr. Christine a letter dated December 21, 1970, which read:

"After discussing the matter of the $168,000 award on the above property, it has been decided that we cannot take the additional funds before the Board of the Authority as they now exist. With the change of administration, it may be an even more difficult determination. With the appraisals of $97,000 and $102,000, the original allocation of $100,000 sounds quite reasonable.

"You and I know that the values of land make the $168,000 a reasonable figure. However, I suggest that

we file an appeal with the hopes of getting a Stipulation to avoid the appeal at a lesser figure." *

24. Before Mr. Christine received Mr. Ragot's letter of December 21, 1970, he mailed to Mr. Roland O. White a copy of the calculation furnished by counsel for condemnees together with a letter dated December 23, 1970, which read:

"The thirty day period of time in which to take an appeal from the Award of Viewers in the above case has elapsed, with neither side taking an appeal. Therefore, it is proper to place this award in line of payment. I enclose herewith a picture copy the statement prepared by counsel of the Condemnees showing their calculations.

"Please apologize to Mr. Ragot for my not responding to his telephone calls yesterday due to the fact that I was involved in matters at the Court House."

25. On January 25, 1971, Mr. Newman, on behalf of condemnees, wrote to Mr. Christine, pressing for payment of the award.

26. On February 1, 1971, Mr. Newman received a telephone call from Mr. Ragot in response to the letter of January 25th. Mr. Ragot said that he would appreciate it if condemnees would bear with him, that the General State Authority was in a state of flux, that there was a new administration in Harrisburg, that funds were low, and that he would have to order further appraisals to justify the payment.

27. On February 2, 1971, Mr. Newman received a second telephone call from Mr. Ragot who stated that

---

* According to a notation at the bottom of this letter, a carbon copy was sent to Mr. Robert H. Jones who was destined 29 days later on January 19, 1971, to be appointed as the new executive director of the General State Authority: 100 Pennsylvania Manual, pages 366 and 458.

the board of the General State Authority had declined to accept the figure of the award because it exceeded appraisals heretofore made, and had instructed Mr. Ragot to file an appeal.

28. On February 3, 1971, Mr. Ragot filed the instant appeal nunc pro tunc without obtaining leave of court.

## DISCUSSION

In civil proceedings, a party who has failed to appeal within the time allotted by statute is precluded from appealing nunc pro tunc unless he, the prospective appellant, can demonstrate that such failure resulted from either (a) fraud, or its equivalent, or (b) some breakdown in the court's operation through a default of its officers, whereby he has been injured: Nixon v. Nixon, 329 Pa. 256, 259, 260, 198 Atl. 154, 157 (1938). This leading decision has been followed generally. So recently as June 28, 1971, the Supreme Court reversed an orphans' court decree which entertained an untimely protest of appraisement in Dixon Estate, 443 Pa. 303, 279 A. 2d 39, 40, and Mr. Justice Eagen said:

"Where an act of assembly fixes the time within which an appeal may be taken, the time may not be extended in the absence of fraud or its equivalent. There may be no extension of time as a matter of indulgence. Cf. Commonwealth v. Bey, 437 Pa. 134, 262 A. 2d 144 (1970); Nixon v. Nixon, 329 Pa. 256, 198 A. 154 (1938); and Yeager v. United Natural Gas Company, 197 Pa. Superior Ct. 25, 176 A. 2d 455 (1961)."

On the same day, the Supreme Court vacated, as having been improvidently made, an order allowing an appeal nunc pro tunc in Luckenbach v. Luckenbach et al., 443 Pa. 417, 281 A. 2d 169. Applications of the rule to appeals from reports of boards of view in eminent domain proceedings may be found in Lima

Building Stone Quarry, Inc. v. Commonwealth of Pennsylvania, Department of Highways, 205 Pa. Superior Ct. 365, 208 A. 2d 884 (1965); and Rizzo Condemnation, 51 D. & C. 2d 410 (C.P. Mercer Co., 1971).

The instant case is governed by section 515 of the Eminent Domain Code of June 22, 1964 (Sp. Sess.), P. L. 84, 26 PS §1-515, the pertinent part of which provides:

"Any party aggrieved by the decision of the viewers may appeal to the court of common pleas within thirty days from the filing of the report. The appeal shall raise all objections of law or fact to the viewers' report. The appeal shall be signed by the appellant or his attorney or his agent and no verification shall be required. Any award of damages or assessment of benefits, as the case may be, as to which no appeal is taken within thirty days, shall become final as of course and shall constitute a final judgment."

Here, the report of the board of viewers was filed on November 20, 1970. Since the thirtieth day thereafter fell on Sunday, December 20th, the final day for taking an appeal was automatically extended to Monday, December 21, 1970: Section 38 of the Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, 46 PS §538; Erie Redevelopment Authority v. Pulakos, 439 Pa. 157, 267 A. 2d 873 (1970), certiorari denied in 400 U.S. 991, 91 S. Ct. 455, 27 L. Ed. 2d 439 (1971); Rizzo Condemnation, 51 D. & C. 2d 410 (C.P. Mercer Co., 1971). The appeal nunc pro tunc was not filed until February 3, 1971, 44 days after this final day; it must fall, unless the delay resulted from at least one of the exceptions to the rule indicated, supra, in Nixon.

As to the first exception, the record is devoid of indications of fraud or the equivalent. Condemnor does, however, level two criticisms of the conduct of

the case by the local attorney of record. In paragraph 4 of the answer, it is alleged that condemnor had requested its local attorney to file an appeal within the time allowed, on December 21, 1970; that he was unavailable on said date; and that since then he has refused to take further action. These allegations are only partly supported by the evidence. It is true that on December 21st, the last day for appeal, Mr. Ragot twice unsuccessfully attempted to make contact with Mr. Christine by telephone; but the letter which he wrote to Mr. Christine on the same day admitted that $168,000 was a reasonable award and "suggested" rather than requested or instructed that an appeal should be filed. This letter did not reach Mr. Christine until after he had mailed his letter of December 23rd to Mr. White, calling attention to the expiration of the time for appeal. Mr. Ragot's telephone conversation with Mr. Newman, 'of counsel for Condemnees, on February 1, 1971, in which he requested forbearance in pressing for payment of the award, tends to negative any inference that Mr. Ragot had, at that time, formed a firm intention to appeal. In the second criticism, counsel for condemnor asserts that Mr. Christine exceeded his authority when he joined with counsel for condemnees in a waiver of notice. The lack of merit in this point will be developed in the course of discussing the duties of the Board of Viewers.

As to the second exception, counsel for condemnors seeks to attribute delay in filing the appeal to the failure of the board of viewers to give the notice of intention provided for in section 513 of the Eminent Domain Code, as amended, 26 PS §1-513:

"Ten days before the filing of their report, the viewers shall mail a copy thereof to all parties or their attorneys of record, with notice of the date of the intended filing and that the report shall become final

unless an appeal therefrom is filed within 30 days from the date the report is filed. Prior to the filing of their report they may correct any errors therein and give notice thereof to the persons affected."

Failure to give notice of intention to file their report would have been a breach of duty by the board of viewers but for the fact that the attorney of record for condemnor and the attorneys for condemnees joined in a stipulation before the board dispensing with notice. In order to neutralize this qualification and re-establish that the board did commit a breach of duty, counsel for condemnor asserts that Mr. Christine, attorney of record for condemnor, had no authority to waive notice. This proposition lacks merit in view of the generally accepted principle that an attorney of record has implied authority to make agreements concerning the procedural, as distinguished from the substantive, aspects of the case, especially where the agreement tends to expedite proper disposition. Thus, in Grocery and Food Warehousemen Local Union No. 635 v. Kroger Co., 364 Pa. 195, 197, 198, 70 A. 2d 218, 219 (1950), the Supreme Court sustained the authority of counsel to agree to disposition by the court en banc, in lieu of trial by jury under the provisions of section 3 of the Arbitration Act of April 25, 1927, P. L. 381, 5 PS §163. Mr. Justice (later, Chief Justice) Jones said:

"In speaking of the implied authority of an attorney at law in Pennsylvania, this court said in Wilson v. Young, 9 Pa. 101, 102 (1848), that 'indeed it would be difficult to point out any matter or thing in the legitimate conduct of a suit to judgment which [the attorney] may not do . . . There is nothing whatever in the argument, that he cannot be allowed to deprive his client of the right of trial by jury; because no one doubts his authority to make an issue in law, by interposing a general demurrer, and thus devolve the

decision upon the court, without the intervention of a jury.' The foregoing statement in Wilson v. Young, supra, was quoted from with approval in Swartz v. D. S. Morgan & Co., 163 Pa. 195, 199, 29 A. 974, and in Cole v. National Casket Company, Inc., 101 Pa. Superior Ct. 207, 212. Specifically, an attorney may enter into stipulations and agreements in all matters of procedure during the progress of the litigation: 2 R. C. L. §68, p. 989; cf. Mary Ann Long's Appeal, 92 Pa. 171, 174-175, 180. See also 7 C.J.S. §100, p. 917; Huffman's Estate (No. 2), 349 Pa. 21, 23, 36 A. 2d 639; and Levin v. Fourth Street National Bank, 277 Pa. 350, 354, 121 A. 105. In fact, it has been held that, in proceedings before a court of record, the apparent authority of an attorney engaged therein is so broad, so far as the court and opposing parties are concerned, as to be plenary in its nature: In Re Level Club, Inc., 46 F. 2d 1002, 1003 (U.S.D.C.N.Y.). Counsel for petitioner competently agreed to the adoption of a legally permissible and expeditious mode of procedure, wherein he fully participated, and he will not be heard to complain, after the court's entry of a final order, that other procedure was not followed."

Since the waiver of notice was valid, it follows that the board of viewers committed no breach of duty in failing to give 10 days prior notice of their intention to file the report.

At this point, it is clear that counsel for condemnor has failed to bring the case within either of the two Nixon exceptions. In effect, he seeks to go farther and establish a new third exception: a breakdown in communication between the attorney of record and his client. This proposition cannot be supported, since notice to the attorney constitutes nòtice to his client. Where the client is an individual person, the inability of counsel to communicate the award to the client

until after the time for appeal has expired will not extend the time for appeal: Yeager v. United Natural Gas Company, 197 Pa. Superior Ct. 25, 176 A. 2d 455 (1961); Rossey v. Mayburg Chemical Company, 58 D. & C. 532 (C.P. Warren Co., 1946). The same principle is applicable where the client is a more complex entity. In Snyder Condemnation, 51 D. & C. 2d 445, 447 (C.P. Columbia Co., 1971), President Judge Kreisher said:

"Counsel for the Commonwealth, which is the condemnor in this case, contends the statutory mandatory 30-day period does not bar this appeal because the board of viewers failed to serve said 10-day notice [under 26 PS §1-513] upon the people in Harrisburg, to wit, the Attorney General, the Secretary of Revenue and/or the Secretary of Highways. He admits, however, he received notice and that he is counsel of record for the Commonwealth in the capacity of a deputy attorney general. He contends, however, since it was the custom in the past of previous Boards of Viewers to send notice to Harrisburg that the Commonwealth was so prejudiced that a fraud was perpetrated and that the time for appeal should be extended.

"The rule is so well established that it requires no citation of authority to state that where the legislature by statute has fixed a time within which an action must be done, the courts have no power to enlarge it except in cases of fraud or its equivalent: King Appeal, 204 Pa. Superior Ct. 490.

"The above-quoted provisions of the code specifically provide that notice be given either to the parties or their attorney of record. It does not require notice to be given to both because it is specifically stated in the alternative. It, therefore, follows notice to counsel of record for the Commonwealth meets the above-quoted procedural requirements, and the Commonwealth is

bound by the statutory limitation for filing appeals the same as an individual or other corporate entity."

Accordingly, since it is not disputed that Elmer D. Christine, Esq., attorney of record for condemnor, received prompt notice of the actual filing of the report and a corrected copy of the same which he duly forwarded on November 27, 1970, to Mr. Roland O. White at the office of the condemnor, it is not necessary to examine into when, and in what manner, that notice penetrated the various echelons in the organization of the General State Authority.

Counsel for condemnor has raised additional questions related to the substantive aspects of the case, rather than to the narrow procedural issue of availability of appeal nunc pro tunc to which our consideration is limited. An attempt to deal defini tively with them here would be to afford a de facto appeal to which, as has just been demonstrated, condemnor is not entitled. One issue, however, is so charged with potential misunderstanding that it cannot be passed without comment. Paragraph 5 of the answer alleges that the legislature authorized the payment of only $100,000 for the premises. Constitutionally, the legislature cannot impose a limit on the amount of damages that may be paid for property taken by eminent domain: Monongahela Navigation Company v. United States, 148 U.S. 312, 327, 13 S. Ct. 622, 37 L. Ed. 463, 468 (1893). There, Congress passed the Act of August 11, 1888, directing the Secretary of War to acquire, by condemnation, Lock No. 7 of the Navigation Company, with a proviso that the franchise of the corporation should not be considered in estimating the damages to be paid by the United States. Eminent domain proceedings were instituted in the Circuit Court of the United States for the Western District of Penn-

sylvania. After an award by viewers, the appeal was taken and the case was tried de novo before the court, a jury having been waived. Obedient to the congressional proviso, the court excluded evidence of tolls collected by the company under its franchise. On appeal, the Supreme Court held that the exclusion was error, reversed the judgment, and remanded the case for a new trial. Mr. Justice Brewer said:

"By this legislation, Congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative question. The legislature may determine what private property is needed for public purposes—that is a question of a political and legislative character; but when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through Congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The Constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry."

In the instant case, it has not been made to appear that the legislature did, in fact, attempt to limit the damages payable for the subject property. Counsel has cited the Act of January 21, 1965, No. 523. Obviously, he intended to cite the Act of January 21, 1965, P.L. 1452 (No. 524), 71 PS §1707.4. This act authorizes an increase in the authorized borrowing capacity of the General State Authority to $1,454,363,944. Section 2 of the act provides that the proceeds shall be allocated in *approximately* the following manner:

"(A) East Stroudsburg
". . .

"No. 5 Land Acquisition 106,316
"(Base Cost $100,000)."

The act is one of a series, by which the legislature increased the borrowing capacity of the authority in order to cover its progressively increasing number of projects.

### CONCLUSIONS OF LAW

1. The last day for filing an appeal to the award of the board of viewers, filed on November 20, 1970, fell on Monday, December 21, 1970.

2. The appeal nunc pro tunc, filed by condemnor, on February 3, 1971, is untimely.

3. The condemnor has presented no valid reason for extending the time for appeal provided by statute.

### ORDER

And now, July 19, 1972, the rule to show cause presented by condemnees is made absolute and the appeal nunc pro tunc filed by condemnor is quashed.